**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Petitioner, | * | |
| v. | * | Case No.: PWG-13-3398 |
| MELINA ALI, | * | |
| Respondent. | * | |

**MEMORANDUM OPINION AND ORDER**

This is an action to enforce an IRS summons (the "Summons") served on Respondent Melina Ali pursuant to 26 U.S.C. § 7602, seeking documents and testimony as part of an investigation into her tax liabilities for the 2004–2011 tax years. Although Ali appeared in response to the Summons on June 3, 2013, she invoked her Fifth Amendment privilege against self-incrimination in response to questioning and refused to produce any documents on Fifth Amendment grounds. The United States has petitioned to enforce the Summons, arguing that it has made the showings required under 26 U.S.C. § 7602 and *United States v. Powell*, 379 U.S. 48 (1964). In response, Ali has moved to quash the Summons arguing that providing any testimony or documents necessarily would violate her Fifth Amendment rights. At an initial hearing on this matter, I found that (i) the Fifth Amendment clearly applies to Ali's testimony, but the record did not contain sufficient information to determine whether it properly was invoked; (ii) Ali has no Fifth Amendment rights in the contents of certain documents sought that preexisted the Summons; and (iii) that the act of production pursuant to the Summons

nevertheless may implicate Fifth Amendment concerns, but that additional briefing was required to allow me to make a ruling. To allow a more complete record to be created before issuing a final ruling on this matter, I issued certain preliminary rulings but otherwise reserved a final ruling and set a schedule for additional briefing on the remaining issues.[1]

## I. BACKGROUND

Respondent Melina Ali is the subject of an investigation by the Internal Revenue Service (the "IRS") into her federal income tax liabilities for the 2004–2011 tax years. Brimage Decl. ¶ 3, Gov't Pet. Ex., ECF No. 7-3. As part of that investigation and pursuant to 26 U.S.C. § 7602, Revenue Agent Gladys Brimage issued an IRS Summons to Ali on April 26, 2013, *id.* ¶ 5, directing her to appear on June 3, 2013 to provide testimony and to produce documents, IRS Summons (the "Summons"), Brimage Decl. Ex. 1, ECF No. 1-4. The Summons sought several categories of documents, described generally as "BANK RECORDS"; "BROKERAGE ACCOUNTS, MUTUAL FUNDS, AND SECURITY ACCOUNTS"; "OWNERSHIP OF ENTITIES AND STRUCTURES"; "PERSONAL OWNERSHIP"; "NON-TAXABLE SOURCES OF INCOME"; "TRAVEL"; "PROFESSIONALS"; "RENTAL ACTIVITIES"; and "TAX INFORMATION." Summons.

On June 3, 2013, Ali appeared in response to the Summons but "refused to produce any documents . . . under the Fifth Amendment to the United States Constitution." Brimage Decl. ¶ 7. Although Ali submitted to a deposition, with the exception of providing her name and confirming her social security number, she invoked the Fifth Amendment in refusing to provide

---

[1] This Memorandum Opinion and Order addresses—but does not dispose of—the United States' Petition to Enforce Summons ("Gov't Pet."), ECF No. 1, as well as the Petition to Quash Summons and/or Deny Enforcement of the IRS Summons Served on Respondent Melina Ali ("Resp't's Mot. to Quash"), ECF No. 7, and the Government's response ("Gov't Quash Opp'n"), ECF No. 10.

substantive answers to any other questions. *See* Ali Dep., Gov't Quash Opp'n Ex. 2, ECF No. 10-4.

Following Ali's refusal to produce documents or provide substantive answers to questioning, the Government filed its Petition on November 14, 2013. Gov't Pet. The Government's Petition seeks to enforce the Summons only with respect to some of the documents originally sought. *Id.* ¶ 11. Specifically, in addition to seeking to compel Ali to testify, *id.*, the Petition seeks to require the production of:

- Summons Item 1.A, seeking records required to be maintained pursuant to 31 C.F.R. § 1010.420 relating to certain foreign financial accounts;
- Summons Items 1.B–H, seeking additional information with respect to Ali's domestic and foreign bank accounts;
- Summons Item 2.A, seeking records required to be maintained pursuant to 31 C.F.R. § 1010.420 relating to certain foreign financial accounts;
- Summons Item 2.B, seeking additional information with respect to Ali's domestic and foreign brokerage accounts, mutual funds, and security accounts;
- Summons Items 3.A–I, seeking information relating to various business entities;
- Items 6.A–C, seeking Ali's passports and driver's licenses; and
- Item 9.A, seeking Ali's income tax returns, with schedules and attachments, for the tax years 2004–2011.

On January 31, 2014, I entered an Order requiring Ali to show cause why she should not be compelled to obey the Summons. Order to Show Cause, ECF No. 2. Ali responded by moving to quash the Summons or deny its enforcement, arguing that it was procedurally improper and, in any event, sought to compel statements in violation of her Fifth Amendment

right against self-incrimination. Resp't's Mot. to Quash. In her motion, Ali discusses a Freedom of Information Act ("FOIA") request that her counsel submitted to the IRS on November 28, 2012. Patel Aff., Resp't's Mot. to Quash Ex. A, ECF No. 7-1. In response to the FOIA request (the "FOIA Request"), the IRS produced 525 of 1,789 pages relating to Ali, and withheld 1,023 pages under the FOIA exemption for "information compiled for law enforcement purposes." FOIA Response, Patel. Aff. Ex. 1, ECF No. 7-2. According to Ali, this indicates that the investigation currently in progress actually is criminal, not civil, in nature, and that the IRS's representations to the contrary should not be credited. Resp't's Mot. to Quash 7. Ali also argues that the investigation cannot be civil because it seeks information beyond the civil statute of limitations. *Id.* at 10. In any event, she argues that the Fifth Amendment protects her from being compelled to answer questions or produce documents because "the mere act of providing testimony and/or documents to the IRS . . . would be tantamount to an incriminating statement on its face." *Id.* (citing *United States v. Cates*, 686 F. Supp. 1185, 1193 (D. Md. 1988)).

The Government responded, taking the position that Ali had not met her burden to show that the Summons was improper. Gov't Quash Opp'n 4–7. The Government also has taken the position that Ali's Fifth Amendment invocation was insufficient, *id.* at 7–10, and that, in any event, the documents sought by the Summons are not covered by the Fifth Amendment privilege, *id.* at 10–17.

A hearing was held before me on April 21, 2014 (the "Hearing"). At that Hearing, I provided preliminary guidance and rulings on certain issues raised by the Petition and the Motion to Quash. This Memorandum and Order memorializes my findings, conclusions, and rulings from the Hearing.

4

## II.     ENFORCEABILITY OF THE IRS SUMMONS

In *Conner v. United States*, 434 F.3d 676 (4th Cir. 2006), the Fourth Circuit laid out the standard to be applied in enforcing an IRS summons, as follows:

> When an interested party challenges enforcement of an IRS summons, under *United States v. Powell*, 379 U.S. 48 (1964), the initial burden rests with the government to establish a *prima facie* showing of good faith in issuing the summons, requiring proof that the IRS has satisfied the following four elements: (1) the investigation is being conducted for a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the information sought is not already in the possession of the IRS; and (4) the administrative steps required by the Internal Revenue Code have been followed. *United States v. Stuart*, 489 U.S. 353, 359–60 (1989); *Powell*, 379 U.S. at 57–58; *Alphin v. United States*, 809 F.2d 236, 238 (4th Cir. 1987). The burden on the government to produce a *prima facie* showing of good faith in issuing the summons is "slight or minimal." *Mazurek v. United States*, 271 F.3d 226, 230 (5th Cir. 2001) (internal quotation marks omitted). Indeed, the government need only present "an affidavit of an agent involved in the investigation averring the *Powell* good faith elements" in order to establish a *prima facie* case for enforcement of a civil summons. *Alphin*, 809 F.2d at 238.
>
> > Once the IRS has made such a showing . . . it is entitled to an enforcement order unless the taxpayer can show that the IRS is attempting to abuse the court's process. Such an abuse would take place . . . if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation. The taxpayer carries the burden of proving an abuse of the court's process.
>
> *Stuart*, 489 U.S. at 360 (internal quotation marks and citations omitted).

*Conner*, 434 F.3d at 680. In addition, 26 U.S.C. § 7602(d) prohibits the IRS from issuing a summons with respect to any person who has been referred to the Department of Justice for possible criminal investigation.

To counter the Government's *prima facie* showing, Ali cannot rely on mere conjecture, but "bears the heavy burden of disproving the actual existence of a valid civil tax determination or collection purpose." *Alphin v. United States*, 809 F.2d 236, 238 (4th Cir. 1987). "Although an evidentiary hearing may be needed for the taxpayer to meet this burden," a taxpayer is not

5

even entitled to a hearing unless she can "allege specific facts in [her] responsive pleadings, supported by affidavits, from which the court can infer a possibility of some wrongful conduct by the IRS." *Id.* (citations omitted).

Agent Brimage recites the *Powell* elements in her Declaration: She states that the Summons was issued for a legitimate purpose—that is, as part of "an investigation into the federal income tax liabilities of Melina Ali" that seeks to determine her tax liabilities and whether penalties should be assessed. Brimage Decl. ¶ 3. She states that the Summons was issued "[i]n furtherance of the . . . investigation." *Id.* ¶ 5. She states that "[t]he books, papers, records, or other data sought by the IRS summons are not already in the possession of the Internal Revenue Service." *Id.* ¶ 10. And she states that "[a]ll administrative steps required by Title 26 of the United States Code for the issuance of a summons have been followed." *Id.* ¶ 11. This is sufficient to meet the Government's burden, with the sole exception of its request for Ali's federal income tax returns in Summons Item 9.A.

Summons Item 9.A seeks: "Complete copies of your previously filed original (and, if applicable, previously filed amended or original returns if not previously filed) U.S. Individual Income Tax Returns Forms 1040 (and, if applicable, Forms 1040X), including all schedules and attached information returns (i.e., Form 5471, Form 8865, Form 3520, Form 926, etc.)." It is plain on the face of this request that all "previously filed" income tax returns already have been provided to the IRS by Ali or her tax preparer. At the Hearing, the Government represented that, because of the large volume of income tax returns filed with the IRS every year, the mere fact that a return was filed does not mean that the IRS can locate and obtain it for current use. But this statement is not sufficient to establish that the IRS no longer has functional possession of a document that plainly was submitted to the IRS. The Government shall make a diligent search

for Ali's tax returns and, should it be unable to locate those returns within thirty days, it may submit a supplemental affidavit describing its efforts to locate Ali's previously filed tax returns. I then will determine whether the Government has made a sufficient showing that the documents constructively are not in the possession of the IRS, even if it technically may have them somewhere beyond the reach of a diligent search. *Cf.* 7 James Wm. Moore et al., *Moore's Federal Practice—Civil* § 34.14[2][a] (observing that, under Fed. R. Civ. P. 34, "when it appears that the documents [sought] may exist or are within the possession, custody, or control of the responding party, that party may be required to do more than simply assert the contrary").

Although the Government has satisfied its *prima facie* burden with respect to the rest of its requests, Ali contends that the Summons was improper and was issued in bad faith. *See United States v. Stuart*, 489 U.S. 353, 360 (1989). The only factual basis for this claim is that the IRS, in response to Ali's 2012 FOIA Request, withheld documents because releasing them would "disclose law enforcement sources, activities, or methods." Resp't's Mot. to Quash 9. However, FOIA "[e]xemption 7(E) is not limited to documents created in connection with a criminal investigation." *Gordon v. F.B.I.*, 388 F. Supp. 2d 1028, 1036 (N.D. Cal. 2005). The IRS has not referred this matter to the Department of Justice, Brimage Decl. ¶ 11, and Ali has not alleged any other facts that can support her assertion that the IRS actually is engaging in a criminal investigation under the guise of a civil one. Accordingly, she has not met her heavy burden even to obtain an evidentiary hearing as to the validity of the Summons. *See Alphin*, 809 F.2d at 238.

### III.  FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION

Even if the Summons procedurally was proper, the Fifth Amendment's privilege against self-incrimination nevertheless "may apply in the context of an IRS investigation into civil tax

7

liability, given the recognized potential that such investigations have for leading to criminal prosecutions." *United States v. Sharp*, 920 F.2d 1167, 1170 (4th Cir. 1990) (citations omitted).

However, "the privilege may not . . . be invoked on no more than the mere assertion by one claiming the privilege that information sought by the government may be incriminating." *Id.* Rather, it requires a finding, first, that "the information is incriminating in nature," which may be apparent from the face of the information sought or may be demonstrated by "further contextual proof." *Id.* at 1170–71. Second, if the information is incriminating, the court then must consider "whether criminal prosecution is sufficiently a possibility, all things considered, to trigger the need for constitutional protection."

Ali has invoked the privilege with respect to testimony as well as to the production of documents. Because testimony and production raise distinct issues under the Fifth Amendment, I will consider each in turn.

### A. Testimony Sought by the Summons

The Summons seeks Ali's testimony and, in fact, she already has been deposed once in response to it, although she refused to provide substantive answers. *See* Ali Dep. In *United States v. Sharp*, the IRS issued a similar subpoena seeking testimony and production of documents as part of a civil investigation. 920 F.2d at 1169. After Sharp's initial refusal resulted in his being held in contempt, Sharp eventually produced some documents that were not useful and the IRS then sought to compel him to answer questions. *Id.* at 1169–70. The Fourth Circuit found that, because "[w]illfullness is an essential element of the criminal offense of failing to file income tax returns," asking Sharp questions about his income and his knowledge thereof for the tax years at issue had the potential, on its face, to be incriminating. *Id.* at 1171. And because there was no indication that the government lacked the legal ability to prosecute or

8

had granted Sharp immunity, the potential for criminal prosecution existed irrespective of whether the government had manifested any intention actually to prosecute him. *See id.*; *see also Kastigar v. United States*, 406 U.S. 441 (1972) (grant of immunity can obviate the concerns raised by the Self-Incrimination Clause of the Fifth Amendment). Accordingly, Sharp could not be compelled to testify. *Id.* at 1172.

Similarly here, the Government seeks to ask Ali about the contents of her income tax returns and the information on which they are based. It readily is apparent that this information has the potential to incriminate her if she has not accurately or honestly stated her income or other information in her filed returns (assuming the IRS can find them). And the Government has not made any showing that it would be barred from prosecuting Ali criminally, or that it has elected to forego its ability to do so under 18 U.S.C. §§ 6002–6003. Accordingly, Ali may not be compelled to provide incriminating testimony pursuant to the Summons.

Nevertheless, a review of Ali's earlier deposition transcript reveals that she has not made an adequate record to invoke her Fifth Amendment rights under *Sharp*. Rather, she simply stated that she was refusing to answer every single question asked, from the routine to the deeply probing. *See* Ali Dep. At the Hearing, the Government requested permission to hold another deposition with an eye towards creating a better record of precisely where and how Ali intends to invoke her Fifth Amendment right. Although I thought that request to be reasonable, Ali suggested that there may be a simpler way to create a clear and adequate record that would allow me to rule on specific invocations of the Fifth Amendment as appropriate.

Accordingly, the parties SHALL CONFER with one another to attempt to agree upon a procedure to effectively develop and present the Fifth Amendment issues relating to Ali's testimony. In the event that the parties cannot agree, the Government MAY DEPOSE Ali, at a

9

time and place mutually agreeable to the parties. If such a deposition is held, Ali SHALL RESPOND to all questions either with a substantive answer, or with a properly supported invocation of her Fifth Amendment right against self-incrimination. Unless otherwise agreed by the parties or ordered by the Court, the deposition will take place within thirty days.

### B. Documents Sought by the Summons

The documents sought by the Summons raise more complicated issues. In *Fisher v. United States*, the Supreme Court observed that "the Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a Testimonial Communication that is incriminating." 425 U.S. 391, 408 (1976). Dealing with a subpoena seeking papers created by a taxpayer's accountant, the Court observed:

> A subpoena served on a taxpayer requiring him to produce an accountant's workpapers in his possession without doubt involves substantial compulsion. But it does not compel oral testimony; nor would it ordinary compel the taxpayer to restate, repeat, or affirm the truth of the contents of the documents sought. Therefore, the Fifth Amendment would not be violated by the fact alone that the papers on their face might incriminate the taxpayer, for the privilege protects a person only against being incriminated by his own compelled testimonial communications.

*Id.* at 409 (citations omitted). Put simply, where "papers had been voluntarily prepared prior to the issuance of the summons[], they could not be 'said to contain compelled testimonial evidence, either of the taxpayers or of anyone else.'" *United States v. Hubbell*, 530 U.S. 27, 36 (2000) (citation omitted). Because the Summons appears to seek only documents that preexisted it, the contents of those documents cannot be protected by the Fifth Amendment.

But this does not end the inquiry, since "the act of *producing* documents in response to a subpoena may have a compelled testimonial aspect" of its own. *Id.* (emphasis added). "By 'producing documents in compliance with a subpoena, the witness would admit that the papers

10

existed, were in his possession or control, and were authentic." *Id.* (footnote omitted). With respect to Ali's personal documents, production runs the risk of being incriminating in and of itself unless the Government were to produce "evidence that possession, existence, and authentication were a 'foregone conclusion.'" *United States v. Doe*, 465 U.S. 605, 614 n.13 (1984) (citing *Fisher*, 425 U.S. at 411).

In *Fisher*, it sufficed that the government could show that the papers "belong to the [taxpayer's] accountant, were prepared by him, and are the kind usually prepared by an accountant working on the tax returns of his client," such that the taxpayer himself was not being relied upon to vouch for the authenticity of his documents. 425 U.S. at 411. Under those circumstances, "production would express nothing more than the tax payer's belief that the papers are those described in the subpoena," irrespective of whether they are authentic or accurate. *Id.* at 412–13. But here, the Government has made no such showing with respect to the majority of the documents sought in the Summons. With the exception of Item 1.A, and possibly Item 2.A, it is impossible to determine, based on the record before me, whether production itself would implicate the Fifth Amendment.

I do note that certain portions of the Summons seek information about corporate entities. "[A] collective entity such as a corporation has no Fifth Amendment rights and the corporation and its officers cannot resist the production of corporate records on self-incrimination grounds." *United States v. Wujkowski*, 929 F.2d 981, 983 (4th Cir. 1991) (citing *Braswell v. United States*, 487 U.S. 99 (1988)). However, there still remains a "crucial distinction . . . between personal documents and corporate documents held by agents in a representative capacity," *id.* at 984, and the Government has made no showing that any of the documents it seeks strictly are corporate in

11

nature.  *But see Doe*, 465 U.S. at 609 (noting that the business records of a sole proprietorship may be no different from the owner's personal records for Fifth Amendment purposes).

There is one category of documents for which the Government already has made an adequate showing: "any and all records required to be maintained pursuant to 31 C.F.R. § 1010.420 (§ 103.32 prior to March 1, 2011) relating to foreign financial accounts . . . ." Summons Item 1.A.  In *United States v. Under Seal*, the Fourth Circuit considered a functionally identical request and held that such documents fall within the "required records doctrine," 737 F.3d 330, 337 (4th Cir. 2013), under which "the privilege against self-incrimination does not bar the government from imposing recordkeeping and inspection requirements as part of a valid regulatory scheme."  *Id.* at 333 (citing *Shapiro v. United States*, 335 U.S. 1, 17 (1948)).  "[T]he Fifth Amendment privilege is inapplicable" to documents required to be kept under 31 C.F.R. § 1010.420, *id.* at 337, and Ali will be required to produce them.

The Government also has represented that Subpoena Item 2.A seeks functionally identical documents.  It is not clear to me whether the government contends that Items 1.A and 2.A seek an identical universe of documents—in which case they are duplicative and Item 2.A need not be addressed at all—or that Items 1.A and 2.A both seek different subsets of the documents covered by *Under Seal*.  If the Government can clarify and demonstrate that Item 2.A is covered by *Under Seal* and is not duplicative, Ali will be required to produce the documents sought in Item 2.A as well.  In any event, as discussed below, Ali need not produce *any* documents at this time.

IV.     **ADDITIONAL BRIEFING IS REQUIRED**

As I indicated at the hearing, there are a number of outstanding issues to resolve before I can determine the degree to which Ali should be required to respond to the Summons.  Because

the majority of the issues in this case remain pending, and because the parties may seek appellate review of any final order I issue in any event, I find that it does not make sense to require Ali to produce any documents at this time. Instead, I will reserve a final ruling on the Government's Petition and on Ali's Motion to Quash until I can do so in a single, comprehensive order that addresses all open issues. Before that will be possible, additional briefing is needed.

As agreed to at the Hearing, the Government shall have thirty days to file a supplemental brief addressing whether the production of the remaining categories of information sought by the Summons implicate the Fifth Amendment privilege against self-incrimination. Ali shall have thirty days thereafter to respond, after which the Government shall have twenty-one days to reply. At that time, I will set this case in for a further hearing if necessary to resolve the remaining issues or will rule on the papers if appropriate.

## V. CONCLUSION

For the aforementioned reasons:

1) The parties SHALL CONFER to determine the most expeditious way to create a more complete record with respect to Ali's invocation of the Fifth Amendment right against self-incrimination in reference to her oral testimony;

2) A final ruling on the United States' Petition to Enforce Summons, ECF No. 1, is RESERVED, pending supplemental briefing;

3) A final ruling on the Petition to Quash Summons and/or Deny Enforcement of the IRS Summons Served on Respondent Melina Ali, ECF No. 7, is RESERVED, pending supplemental briefing;

4) Ali NEED NOT PRODUCE any documents until ordered to do so; and

5) Supplemental briefing in accordance with this Memorandum and Order shall take place according to the following schedule:

   a. The Government SHALL FILE its supplemental brief no later than Wednesday, May 21, 2014;

   b. Ali SHALL FILE her response no later than Monday, June 23; and

   c. The Government SHALL FILE its reply no later than Monday, July 14, 2014.

It is so ordered.


Dated: April 24, 2014                                             /S/
                                                           Paul W. Grimm
                                                           United States District Judge

dsy