## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Southern Division*

|  |  |
|---|---|
| | * |
| UNITED STATES OF AMERICA, | * |
| Petitioner, | * |
| v. | *    Case No.: PWG-13-3398 |
| MELINA ALI, | * |
| Respondent. | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OPINION

The United States brought this civil action to enforce an IRS Summons and Respondent moved to quash it on statutory and Fifth Amendment grounds. Following an initial hearing at which I ruled that the Summons itself was valid and certain materials sought were not protected by the Fifth Amendment, I ordered the parties to provide additional briefing on the remaining issues. The Government argues that Respondent is not protected by the Fifth Amendment, that the existence of the documents it seeks is a foregone conclusion, and that she has not shown why her testimony would be incriminating. Respondent contends that the mere act of production would be incriminating, as would be readily apparent from the context of the requests themselves, and the documents produced in response thereto. Because I find that the mere production of most of the documents sought by the Summons would not require Respondent to

incriminate herself, I order her to comply with the Summons, except for specified documents with respect to which I find her assertion of privilege to be warranted.[1]

## I.    BACKGROUND

The facts of this case are discussed in detail in my earlier Memorandum Opinion and Order issued April 24, 2014. *United States v. Ali*, No. PWG-13-3398, 2014 WL 1660280 (D. Md. Apr. 24, 2014).  In a nutshell, Respondent Melina Ali was served with a summons (the "Summons") by the Internal Revenue Service on April 26, 2013, directing her to provide testimony and to produce various categories of documents for the period December 31, 2004 through December 31, 2011. *Id.* at *1.  Ali appeared in response to the Summons but refused to answer any questions or to produce any documents, asserting the Fifth Amendment privilege against self-incrimination.  *Id.*  On November 14, 2013, the Government filed a Petition to Enforce Summons ("Gov't's Pet."), ECF No. 1, in this Court, seeking to compel Ali to testify and to produce certain categories of documents sought in the Summons.   Specifically, the Government seeks to compel the production of:

- Summons Item 1.A, seeking records required to be maintained pursuant to 31 C.F.R. § 1010.420 relating to certain foreign financial accounts;

- Summons Item 1.B, seeking a list of foreign bank accounts that Ali provided to her attorney and/or tax preparer;

---

[1]     This Memorandum Opinion and Order addresses the United States' Petition to Enforce Summons ("Gov't's Pet."), ECF No. 1; the Petition to Quash Summons and/or Deny Enforcement of the IRS Summons Served on Respondent Melina Ali ("Resp't's Mot. to Quash"), ECF No. 7, and the Government's Supplemental Brief in Support of Its Petition to Enforce Summons (Privilege) ("Gov't Supp. Br."), ECF No. 19, the Supplemental Response Brief of Respondent Melina Ali, ("Ali's Supp. Resp."), ECF No. 20, and the Government's Reply to Respondent's Supplemental Response Brief ("Gov't Supp. Reply"), ECF No. 23.

- Summons Items 1.C–H, seeking a broad range of documents relating to Ali's foreign and domestic bank accounts during the relevant period;[2]

- Summons Item 2.A, seeking records required to be maintained pursuant to 31 C.F.R. § 1010.420 relating to certain foreign financial accounts;

- Summons Item 2.B, seeking additional information with respect to Ali's domestic and foreign brokerage accounts, mutual funds, and security accounts;

- Summons Items 3.A–I, seeking information relating to various business entities;

- Summons Items 6.A–B, seeking Ali's passports and driver's licenses;[3] and

- Summons Item 9.A, seeking Ali's income tax returns, with schedules and attachments, for the tax years 2004–2011.

I issued an Order to requiring Ali to show cause why she should not be required to comply with the Summons, and Ali responded with a Petition to Quash Summons and/or Deny Enforcement of the IRS Summons Served on Respondent Melina Ali ("Resp't's Mot. to Quash"), ECF No. 7.

I held a hearing on April 21, 2014 to address the enforceability of the Summons generally and Ali's Fifth Amendment arguments.  At that hearing, I ruled that the Summons was proper and that Ali had not met her "heavy burden" to obtain an evidentiary hearing on whether the

---

[2]     Although Summons Items 1.C–H seek a variety of different types of documents, including those prepared by banks, by Ali, or by others, the parties have grouped them into a single legal discussion in their briefs.  This appears to evidence an agreement by the parties that, whatever differences there may be among the types of documents sought in those Summons Items, they are without legal significance, and I will follow the categorization used by the parties here.

[3]     Although the Government's Supplemental Memornadum addressed Summons Items 6.A–C, its Petition sought production of documents only in response to Items 6.A–B, and not 6.C.  Accordingly, the Government has not sought production of documents in response to Item 6.C and I will not consider it here.

Summons had been issued in bad faith. *Ali*, 2014 WL 1660280, at *4. However, I noted that Item 9.A, seeking Ali's previously filed tax returns, appeared to seek information that was within the possession of the IRS and therefore was not appropriate unless and until the Government made a diligent search for those tax returns and determined that they could not be located. *Id.*

I also ruled that Summons Item 1.A, insofar as it sought only records required to be maintained pursuant to 31 C.F.R. § 1010.420, was covered by the required records doctrine and documents responsive to that category must be produced. *Id.* at *7. I asked for clarification as to whether Summons Item 2.A, which also seeks documents required to be maintained pursuant to 31 C.F.R. § 1010.420 (and therefore also within the required records doctrine), sought a different class of documents or merely duplicated Item 1.A. *Id.* With respect to the remaining documents, I found that the parties had not provided sufficient information to determine whether production of those documents was privileged under the Fifth Amendment, and ordered the parties to provide additional briefing on the matter. *Id.* at *7–8.

The Government also sought to compel Ali to respond to questions after she had refused to do so at an interview in June 2013. I found that she had not made a sufficient record at that interview properly to invoke her Fifth Amendment rights. *Id.* at *5. Accordingly, I ordered the parties to work together to develop a more complete record to present the issue in a manner that would facilitate meaningful review, *id.* at *5–6, and to address it in their supplemental briefs as well, *id.* at *8.

On May 27, 2014, Ali appeared for a second interview (the "2014 Interview") at which time she "answered many questions, but continued to decline to answer more than 200 questions" relating to specific topics. Gov't's Supp. Br. in Supp. of Its Pet. to Enforce Summons (Privilege) ("Gov't's Supp. Br.") 3, ECF No. 19. Subsequently, the Government filed its

Supplemental Brief, seeking to require her to answer those 238 questions and to produce documents in response to the Summons Items listed above, with the exception of Items 9.A–C. *Id.* at 6, 14. Ali responded by filing her Supplemental Response ("Ali's Supp. Resp."), ECF No. 20, arguing not only that she should not be compelled to answer any additional questions or produce any additional documents, but also seeking reconsideration of my earlier ruling that the Summons is enforceable and Items 1.A and 2.A are not covered by the Fifth Amendment. Ali's Supp. Resp. The Government has replied, Gov't's Reply to Resp't's Supp. Resp. Brief ("Gov't's Supp. Reply"), ECF No. 23, and the matter is fully briefed (although in contesting every issue regardless of whether the argument had merit, the parties have, in many instances, succeeded more in obfuscating the issues than in clarifying them). Having reviewed the filings, I find that a hearing is not necessary. Loc. R. 105.6.

## II.    ALI'S REQUESTS TO RECONSIDER

A substantial portion of Ali's Supplemental Response is spent rearguing that the Summons is unenforceable because it was issued in bad faith and that, in any event, the Fifth Amendment shields Ali from producing documents in response to Summons Items 1.A and 2.A. Because I already have ruled on these issues in my earlier Memorandum Opinion and Order, *Ali*, 2014 WL 1660280, at *4, *7, this properly is viewed as a motion to reconsider my earlier ruling.

At the outset, this Court's local rules require a motion to reconsider to be filed not more than fourteen days after entry of the order sought to be reconsidered. Loc. R. 105.10. Ali's request to reconsider—which was not filed as a free-standing motion in any event—was filed on July 8, 2014, and therefore is untimely as relates to my ruling on April 24, 2014. But even if the fact that I reserved final ruling on the Government's Petition and Ali's Motion to Quash makes it

unclear whether a motion to reconsider is timely, Ali has not shown any grounds why such a motion should be granted.

In the widely cited case of *Above the Belt, Inc. v. Bohannan Roofing, Inc.*, 99 F.R.D. 99 (E.D. Va. 1983), the court noted there are "circumstances when a motion to reconsider may perform a valuable function," but that it is improper to use such a motion to "ask the Court to rethink what the Court had already thought through—rightly or wrongly." *Id.* at 101. The court concluded:

> The motion to reconsider would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

*Id.*

With respect to the enforceability of the Summons generally, Ali argues that there has been an intervening change in the law following the Supreme Court's June 19, 2014 ruling in *United States v. Clarke*, 134 S. Ct. 2361 (2014). In that case, Justice Kagan, writing for a unanimous Court, held that "a bare allegation of improper purpose does not entitle a taxpayer to examine IRS officials. Rather, the taxpayer has a right to conduct that examination when he points to specific facts or circumstances plausibly raising an inference of bad faith." *Id.* at 2365.

According to Ali, the Supreme Court relaxed the standard for a party opposing an IRS Summons to obtain an evidentiary hearing to challenge the good faith basis for the summons in the following dicta in *Clarke*:

> circumstantial evidence can suffice to meet that burden; after all, direct evidence of another person's bad faith, at this threshold stage, will rarely if ever be available. And although bare assertion or conjecture is not enough, neither is a fleshed out case demanded: The taxpayer need only make a showing of facts that give rise to a plausible inference of improper motive.

*Id.* at 2367; *see also* Ali's Supp. Resp. 7.

But Ali simply is incorrect that *Clarke* worked a change in the law. In fact, the Court granted certiorari in that case for the purpose of correcting the Eleventh Circuit, which had split from every other circuit to hold that "a bare allegation of improper motive entitles a person objecting to an IRS summons to examine the responsible officials." *Clarke*, 134 S. Ct. at 2367. Nothing in *Clarke* is the least bit inconsistent with the standard applied by the Fourth Circuit in *Conner v. United States*, 434 F.3d 676 (4th Cir. 2006), and accordingly, the request that I reconsider my earlier ruling that the Summons is enforceable on the basis of *Clarke* borders on the frivolous.[4]

With respect to Ali's request that I reconsider whether Items 1.A and 2.A fall within the required records doctrine, Ali does not even allege a change in law or the existence of new facts, but simply argues that producing such material may incriminate her—particularly because the production of documents that she was required to and did not report is, itself, evidence of a violation of 31 U.S.C. § 5322, which imposes criminal penalties for willful nonreporting. Ali's Supp. Resp. 15.

Not only is this an insufficient basis to reconsider my earlier decision, it simply misapprehends the scope and effect of the required records doctrine. As the Sixth Circuit has explained, "[t]he fatal flaw in [this] reasoning is that it overlooks the fundamental fact that the required records doctrine is an *exception* to the Fifth Amendment. As such, the doctrine

---

[4]     Ali also argues that a March 2014 summons served upon Ali's banks is significant because the IRS no longer can claim that it does not already have the information the Summons seeks. *See* Ali's Supp. Resp. 20 (citing *Conner*, 434 F.3d at 680. However, "[t]he validity of the summons 'became fixed when the summons was served,'" and later events cannot retroactively render it invalid. *United States v. Rosinsky*, 547 F.2d 249, 254 (4th Cir. 1977) (quoting *Couch v. United States*, 409 U.S. 322, 329 n.9 (1973)).

presupposes that compliance with the government's inquiry may be incriminating." *In re Grand Jury Subpoena*, 781 F.2d 64, 70 (6th Cir. 1986).

Further, as the Seventh Circuit has explained:

> One of the rationales, if not the main rationale, behind the Required Records Doctrine is that the government or a regulatory agency should have the means, over an assertion of the Fifth Amendment Privilege, to inspect the records it requires an individual to keep as a condition of voluntarily participating in that regulated activity. That goal would be easily frustrated if the Required Records Doctrine were inapplicable whenever the act of production privilege was invoked.
>
> The voluntary choice to engage in an activity that imposes record-keeping requirements under a valid civil regulatory scheme carries consequences, perhaps the most significant of which, is the possibility that those records might have to be turned over upon demand, notwithstanding any Fifth Amendment privilege. That is true whether the privilege arises by virtue of the contents of the documents or by the act of producing them.

*In re Special February 2011-1 Grand Jury Subpoena dated September 12, 2011*, 691 F.3d 903, 908–09 (7th Cir. 2012). Accordingly, by choosing to engage in transactions with foreign banks and entities that are covered by 31 C.F.R. § 1010.420, Ali consented to present the required records to the government if requested, and cannot now invoke the Fifth Amendment to avoid so doing.

In addition, the Government has clarified the different scope of Summons Items 1.A and 2.A. Item 1.A seeks information related to "foreign bank accounts," whereas Item 2.A seeks information relating a different class of accounts: "foreign brokerage accounts, mutual funds and security accounts." Gov't's Supp. 7. I am satisfied that these categories are not duplicative, and because they are defined by the scope of 31 C.F.R. § 1010.420, they are entirely within the required records doctrine. Accordingly, with respect to Summons Items 1.A and 2.A, the Government's Petition will be granted, and Ali's Motion to Quash will be denied; Ali will be required to produce documents in response to those Summons Items.

## III.   REMAINING DOCUMENTS SOUGHT BY THE SUMMONS

### A.   Ali's Personal Bank and Brokerage Records—Summons Items 1.C–H and 2.B

Summons Items 1.C–H and 2.B seek an extensive list of records relating to Ali's domestic and foreign bank and brokerage accounts.   Importantly, Ali acknowledges that the documents themselves likely are not covered by the Fifth Amendment because they existed prior to the Summons and therefore "the creation of those documents was not 'compelled' within the meaning of the privilege" against self-incrimination. *See United States v. Hubbell*, 530 U.S. 27, 36 (2000); *see also* Ali's Supp. Resp. 12.   Rather, Ali argues only that "the act of producing such documents would convey that Ms. Ali received information about such accounts," which would tend to show that, to the extent she did not report the contents of those accounts, she acted willfully and may be subject to criminal penalties.   Ali's Supp. Resp. 17.   But this does not suffice to meet Ali's burden to show that the act of producing the documents is incriminating in and of itself. *See United States v. Wujkowski*, 929 F.2d 981, 984 (4th Cir. 1991) (party asserting the Fifth Amendment privilege bears the burden to prove the nature of the documents in question).

As a threshold matter, the Fifth Amendment does not protect against the production of documents where "their existence, possession, and authentication are a 'foregone conclusion.'" *United States v. Stone*, 976 F.2d 909, 911 (4th Cir. 1992).   Ali reported the existence of accounts with Citibank, Citigroup, SunTrust, and National Financial Services in her 2006 Income Tax Return.   2006 U.S. Individual Income Tax Return (Form 1040) 5, Brimage Decl. Ex. A, ECF No. 19-6.   She also testified that she has accounts at Citibank, SunTrust, and Smith Barney, had a brokerage account with Fidelity and/or Franklin Templeton, and has annuities with

9

TransAmerica, New York Life, and Ohio Mutual.  Interview of Ali, May 27, 2014 (the "2014 Interview") 156:19 – 160:9, Gov't's Supp. Br. Ex. D, ECF No. 19-9.  And Ali is required to report to the IRS her interests in any foreign bank accounts pursuant to 31 C.F.R. § 1010.350, so that the existence of any such accounts is or already should be known by the Government.  The fact that Ali applied for each of her bank accounts and received monthly statements and other information from the banks where those accounts are located is sufficiently well-known to be judicially noticeable.  *See Kaggen v. I.R.S.*, 71 F.3d 1018, 1020–22 (2d Cir. 1995); Fed. R. Evid. 201.  The same is true of Ali's brokerage accounts.  Acknowledging the existence of the documents listed in Items 1.C–H and 2.B therefore would add little, if anything, to the Government's knowledge.

The mere production of the documents also cannot be incriminating because it does not require Ali to authenticate them (the IRS may have them authenticated by the banks) or to concede the truth of their contents as against any contrary representations by Ali.  Rather, any discrepancies between the documents and Ali's previously filed tax returns could as easily be the result of bank errors, transactions of which Ali was not aware, or even identity theft or fraudulent transactions without her permission as the result of any willful or improper misrepresentation.[5] These possibilities distinguish this case from *United States v. Sharp*, in which the Fourth Circuit held that requiring a respondent to *testify* about his income could provide direct evidence that he willfully underreported.  920 F.2d 1167, 1171 (4th Cir. 1990.  In short, the existence of these documents is a foregone conclusion based on Ali's on prior disclosures, and the act of further producing them (without testifying about them) is not incriminating.

---

[5]     In fact, Ali testified that she has been a victim of identity theft in the past.  2014 Interview 161:4–7.

And finally, even were the information incriminating on its face, it is apparent that she has waived the privilege at least with respect to her domestic accounts whether or not she disclosed every such account at her interview. "It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." *Mitchell v. United States*, 526 U.S. 314, 321 (1999) (citing *Rogers v. United States*, 340 U.S. 367, 373 (1951)). During her interview, Ali provided a list of the banks and brokerages where she had accounts and answered numerous questions about them. 2014 Interview 156:4 – 163:11. Ali argues that the possibility that documents would show that she "willfully testified falsely during the interview" "makes her claim to the [Fifth Amendment] privilege even stronger." Ali's Supp. Resp. 19. But to the contrary, it is well-settled "that the Fifth Amendment 'does not endow the person who testifies with a license to commit perjury.'" *United States v. Apfelbaum*, 445 U.S. 115, 127 (1980) (quoting *Glickstein v. United States*, 222 U.S. 139, 142 (1911)). "'[P]roper invocation of the Fifth Amendment privilege against compulsory self-incrimination allows a witness to remain silent, but not to swear falsely . . . .'" *Id.* at 116; *see also Brogan v. United States*, 522 U.S. 398, 404–05 (1998) (same). Ali directly answered questions about the identity of her domestic accounts and, having declined to remain silent, she now cannot seek to withhold documents on the grounds that they may show that she perjured herself on that issue. Accordingly, Ali will be required to produce documents respecting her personal accounts in response to Summons Items 1.C–H and 2.B.

**B.     List of Bank Accounts Prepared by Ali—Summons Item 1.B**

Summons Item 1.B seeks a list provided by Ali to her tax attorneys Sonali Patel and JG Tax Group listing Ali's foreign bank accounts and which Patel had represented she would

provide to the Government but later declined to provide.  The Government argues that the existence of this document is a foregone conclusion and that the production of the document would not authenticate it, and therefore that its production is not protected by the Fifth Amendment. Gov't's Supp. Br. 11–12.

However, with respect to the list sought in Item 1.B, Ali not only asserts the Fifth Amendment privilege against self-incrimination, but also argues that the list is protected by the attorney–client privilege.  The attorney–client privilege "is the oldest of the privileges for confidential communications known to the common law," and serves "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  To assert the privilege, a party must demonstrate:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Allen*, 106 F.3d 582, 600 (4th Cir. 1997) (quoting *United States v. Tedder*, 801 F.2d 1437, 1442 (4th Cir. 1986)).  Here, it is not disputed that Ali was a client of Patel's, that Patel is an attorney, or that Ali provided Patel with the list of foreign bank accounts to secure legal advice. *See* Ali's Supp. Resp. 23.  The Government also has not contended that Patel was attempting to aid Ali in the commission of a crime or tort.  The list plainly falls within the scope of the privilege.  The Government's only argument is that Ali had not previously asserted the privilege despite having "multiple opportunities to do so." Gov't's Supp. Reply 17.

The Government simply is incorrect that Ali has squandered multiple opportunities to assert the attorney–client privilege with respect to her list of foreign bank accounts. No documents have been produced by the parties regarding the pending motion and the only previous briefing provided by Ali was an attack on the Summons *in toto*, following which I ordered the parties to provide briefing on the specific Summons Items that the Government is seeking to enforce. *See* Mem. Op. 12–13. To argue the contrary, the Government quotes from a treatise stating that where a "client fails to timely and properly voice any objection to the disclosure, [s]he impliedly waives the privilege protection." 2 Paul R. Rice et al., *Attorney–Client Privilege in the U.S.* ¶ 9:33. But in its selective citation to this treatise, the Government conveniently overlooks its further explanation that the need for "the privilege holder *timely [to] assert* [her privilege] generally translates into an objection on the ground of privilege being made before there is a disclosure of the communication." *Id.* Here, no disclosure has occurred yet, and Ali has not missed any deadlines or failed to provide a privilege log where required to do so. *Cf., e.g., Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 240 F.R.D. 44, 48 (D. Conn. 2007) (finding privilege waived where party failed to supply a privilege log in a timely fashion). Accordingly, the list that she provided to her attorney in confidence under circumstances falling within the aegis of the attorney–client privilege remains protected, and she shall not be required to disclose it in response to Summons Item 1.B.

### C.   Corporate Records—Summons Items 1.C–H and 3.A–I

The Summons further seeks several categories of documents related to "domestic and foreign entities/structures." First, in addition to seeking personal bank records as already discussed, Items 1.C–H seek records relating to domestic and foreign "business accounts, . . . LLC accounts, [and] other corporate accounts" over which Ali "had signature authority and/or

other authority and/or over which [she] exercised control" during the relevant period. Second, Items 3.A–I seeks a comprehensive list of organizational documents, records, and other files relating to "domestic and foreign entities/structures . . . in which [Ali] exercised control and/or held an ownership interest, legal interest, fiduciary interest, and/or beneficial interest" during the relevant time period. Ali argues that the production of any of these documents "would be potentially incriminating" because she would be required to admit that she has a financial interest in certain entities that she has not reported. Ali's Supp. Resp. 20. She also objects to any production that would require her to "convey her 'belief that the papers are those described in the [Summons].'" *Id.* at 21 (quoting *United States v. Doe*, 465 U.S. 605, 613 (1984)).

However, it is well-settled that "a corporate custodian . . . may not resist a subpoena for corporate records on Fifth Amendment grounds." *Braswell v. United States*, 487 U.S. 99, 109 (1988); *see also Wujkowski*, 929 F.2d at 983 (same). "Any claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation—which of course possesses no such privilege." *Braswell*, 487 U.S. at 110. This doctrine is known as the "collective entity" rule. *Id.* at 104. Ali attempts to rely upon *United States v. Doe*, for the proposition that the production of corporate documents can, under some circumstances, be protected under the Fifth Amendment. Ali's Supp. Resp. 21. But *Doe* considered the privilege only in the context of a sole proprietorship, in which "the owner . . . acts in a personal rather than a representative capacity," *Doe*, 465 U.S. at 609, and its reasoning does not apply to corporate entities generally. *Braswell*, 487 U.S. at 104.

The Government has asserted, and Ali has not contested, that Ali has served as the secretary and treasurer of at least two entities: White Pearl Enterprises LLC d/b/a White Pearl Investment Company ("White Pearl") and Richtree Corporation ("Richtree"), which have issued

5,000 and 25,000 shares of common stock, respectively. Gov't's Supp. Br. 11. Neither of these entities is a sole proprietorship, and accordingly, Ali holds the records of White Pearl and Richtree in a representative, not a personal, capacity. Ali also has not argued that the contents of White Pearl and Richtree's corporate files are personal, rather than corporate, in nature. *See Wujkowski*, 929 F.2d at 984. And it is not relevant that the Summons, though seeking corporate records, is addressed to Ali personally. *Dreier v. United States*, 221 U.S. 394, 399 (1911) ("By virtue of the fact that they were the documents of the corporation in his custody, and not his private papers, he was under an obligation to produce them when called for by proper process."). Ali argues that she no longer is an officer of Richtree, Ali's Supp. Resp. 22, but this does not transform corporate documents that she obtained in a representative capacity into personal ones merely because she retained them after she ceased to serve as custodian, and Ali cites no case law to the contrary. Although the Government only has knowledge of White Pearl and Richtree, I also cannot see how the Fifth Amendment would apply to any entity for which Ali is or, during the relevant time period, was the custodian of records under circumstances equivalent to her possessing documents of White Pearl and Richtree, even if the Government is not aware of such entities. Accordingly, Ali must comply with Summons Items 1.C–H and 3.A–I with respect to any and all entities for which she is or has been the custodian of records under the stated circumstances.

But insofar as the Government seeks the production of "any other business to which [Ali] owns an interest," Gov't's Supp. Br. 11, its request extends beyond the scope of the collective entity rule. Although Ali may bear the burden of proof to show that any corporate documents that she holds indeed are personal in nature, *see Wujkowski*, 929 F.2d at 984, the mere fact that a document relates to Ali's holdings in a corporate entity does not alone establish that she

15

possesses it in a representative capacity. And unlike the production of her personal bank records, the Government has not shown why the production of corporate documents not held by her in a custodial capacity would not require Ali to admit holdings in certain entities. *See* Gov't's Supp. Reply 16–17 (arguing only that the Fifth Amendment does not apply to corporate documents held in a representative capacity). Asking Ali to produce documents relating to entities in which she owns an interest would require her to acknowledge her belief that she owns an interest in such entities, which, as in *Sharp*, could establish that she willfully misrepresented her ownership interests in the past. *See United States v. Sharp*, 920 F.2d 1167, 1171 (4th Cir. 1990). On the record before me, I find that such a production implicates the Fifth Amendment and therefore cannot be compelled. To the extent that the Government's Petition seeks production of documents in response to Summons Items 1.C–H and 3.A–I with respect to entities in which Ali similarly has an ownership interest, but is not holding them in a representative capacity, it will be denied without prejudice

### D. Ali's Identification—Summons Items 6.A–B

Summons Items 6.A–B seek Ali's U.S. and foreign passports, whether current or expired. Having failed to respond to the Government's argument on this point, Ali has conceded it. *See Burns & Russell Co. of Balt. v. Oldcastle, Inc.*, 166 F. Supp. 2d 432, 440 (D. Md. 2001). Accordingly, Ali will be required to respond to Summons Items 6.A–B.

### IV. Testimony Sought by the Summons

The Government also seeks to compel Ali to provide testimony in response to the Summons. After Ali refused to provide any substantive responses at her initial, June 2013 interview, she was re-interviewed by the Government on May 27, 2014, where she answered many questions and refused to answer many others on Fifth Amendment grounds. *See generally*

16

2014 Interview.   The Government has provided a partial transcript of the interview, which appears to include Ali's significant invocations of privilege but omits a number of pages that, though presumably unhelpful to the Government, would have been useful to provide context to the interview as a whole.

In its excerpts, the Government has identified 238 questions that Ali refused to answer on Fifth Amendment grounds, and has grouped them into categories by subject: "Inheritance, Gifts, and Non-Taxable Sources of Income"; "Property Ownership"; "Loans Made"; "Sources of Property"; "Businesses"; "Income During the Tax Years at Issue"; "Use of Structured Accounts"; and "Foreign Bank Accounts." *See* Gov't's App'x II: List of Questions Where Respondent Pled the Fifth Amendment ("Gov't's App'x II"), Gov't's Supp. Br. App'x 2, ECF No. 19-3.   According to the Government, Ali did not validly invoke the Fifth Amendment because she did not explain why her answers would have been incriminating, Gov't's Supp. Br. 14, and the incriminating nature of Ali's responses was not readily apparent, *id.* at 15.   The Government asks me to deny Ali's Motion to Quash or, in the alternative, to hold an *in camera* hearing to determine whether Ali's answers to the questions she was asked actually would incriminate her.

"[N]o ritualistic formula or talismanic phrase is essential in order to invoke the privilege against self-incrimination.   All that is necessary is an objection stated in language that a [questioner] may reasonably be expected to understand as an attempt to invoke the privilege." *Emspak v. United States*, 349 U.S. 190, 193 (1955).   However, "to invoke this privilege the party claiming it must not only affirmatively assert it, [s]he must do so with sufficient particularity to allow an informed ruling on the claim." *N. River Ins. Co. v. Stefanou*, 831 F.2d 484, 487 (4th Cir. 1987).   The "proper invocation of the fifth amendment privilege requires its assertion with

17

respect to specific questions," *United States v. Boineau*, 856 F.2d 187, 1988 WL 86616, at *1 (4th Cir. Aug. 19, 1988) (unpublished opinion), and generally, "a blanket refusal to respond [is] not sufficient," *N. River Ins. Co.*, 831 F.2d at 487.

In my earlier opinion, I found that, by refusing to answer every substantive question she was asked, Ali's invocation of the Fifth Amendment at her earlier interview was tantamount to a blanket refusal to respond and did not provide an adequate record on which to rule on her invocation of the Fifth Amendment. *Ali*, 2014 WL 1660280, at *5. In contrast, the transcript of Ali's 2014 Interview demonstrates that her invocations of the Fifth Amendment—though frequent and covering a large portion of the material on which she was questioned—were made in response to specific questions. *See generally* 2014 Interview. And Ali answered a number of questions that, though apparently not incriminating, she had refused to answer at her initial interview. *See, e.g.*, 2014 Interview 8:19 – 13:8 (previous names that Ali has used), 13:17–18 (Ali's citizenship), 12:9–16 (Ali's marital status). And crucially, the Government has acknowledged that she invoked her right to silence only with respect to certain subject matter. *See* Gov't's App'x II. This is a sufficient record on which to discern the scope of her refusal to testify and to rule on it.

Moreover, compelling Ali's testimony implicates a different set of concerns than those raised by the Government's attempt to obtain documents. Whereas Ali may produce documents from her banks without adopting their contents without authenticating them, she cannot distance herself from her own testimony. If her testimony contradicts the statements she made on her tax returns for the years that the IRS is investigating, it potentially could show that she willfully misrepresented her income or other information relating to her tax liability, which is an essential element of the criminal offense of failure to file income tax returns. 26 U.S.C. § 7203; *United*

18

*States v. Sharp*, 920 F.2d 1167, 1171 (4th Cir. 1990). As the Fourth Circuit has recognized in a similar case, it is "evident from the very questions asked under the circumstances of their asking" that, even if not directly incriminating, any such testimony could "'furnish a link in the chain of evidence that could lead to prosecution,' and that suffices." *Id.* (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951).

Indeed, the broad categories outlined by the Government show that Ali's invocations of the Fifth Amendment cover areas that directly are relevant to whether Ali willfully misrepresented her tax liability. In light of *Sharp*, it borders on disingenuous for the Government to contend that questions about Ali's "Income During the Tax Years at Issue" could not call for an incriminating answer. And in several instances, the Government's description of the categories misrepresent the very nature of the questions asked. For example, the Government argues that Ali must answer questions about "Gifts, Inheritances, and Non-Taxable Items" because those items would not have led to any tax liability. *See* Gov't's Supp. Br. 16. But of the six questions that the Government lists under that heading, three actually ask if Ali inherited any interest in her father's business—questions that could lead to evidence that she misrepresented her holdings or received unreported income from that business. *See* Gov't's App'x II, Questions 1, 2, 6. The Government asserts with respect to several categories that there only is the possibility that those questions "*might* be incriminating for *some* taxpayers," Gov't's Supp. Br. 19, and that "there is no evident risk of incrimination from the questions, unless hypothetical, unique circumstances are present." Gov't's Supp. Reply 20. But by invoking the Fifth Amendment Ali has made clear that she believes that they *would* be incriminating with respect to *her*. The context of this case—including the Government's insistence on obtaining Ali's tax information and her persistent resistance—suggest that such circumstances are far more than

hypothetical.   And it readily is apparent how questions about Ali's "Property Ownership," "Loans Made," "Sources of Property," "Businesses," "Use of Structured Accounts," and "Foreign Bank Accounts" could lead to evidence that Ali's income and financial situation are other than she had reported.  *Sharp* does not require more for her to invoke her Fifth Amendment privilege appropriately.

The Government also objects to Ali's invocation of the Fifth Amendment in response to several specific questions on the grounds that her stated reason for refusing to answer was not a valid invocation of the Fifth Amendment.  But once again, the Government has ignored the context surrounding Ali's explanations and, in so doing, has mischaracterized them.  For example, the Government argues that Ali improperly objected to certain questions as assuming facts not in evidence, which it asserts is not a valid reason to invoke the Fifth Amendment.  *See* Gov't's Supp. Br. 15 (citing *United States v. Ottovich*, No. 11-cv-01793-JSW(JCS), 2013 WL 6486919, at *9 (N.D. Cal. Oct. 17, 2013)).  But in fact, Ali was responding to questions that, for her to answer, would have required an acknowledgement of facts about which she already had refused to testify, and thus would have waived her Fifth Amendment privilege on matters with respect to which she already had invoked it.  *See id.* 199:1–7 (refusing to answer the question "Is that money from your foreign account?" after previously refusing to state whether Ali had any foreign accounts), 217:14–22 (refusing to provide the cost of a home at the time Ali purchased it after previously refusing to state whether she had purchased the home).   Similar issues appear to exist where the Government contends that Ali improperly invoked the Fifth Amendment "because she did not know the answer to the question." Gov't's Supp. Br. 14.  In fact, these actually appear to be instances in which Ali was unclear on the information sought or was concerned that answering based upon incomplete information could constitute a waiver with

respect to incriminating facts of which she was not certain at the time. *See id.* at 83:14 –84:12 (declining to answer where Ali's counsel explained that "I don't know if, sitting here today, that we would be able to definitively figure out the answer, because he is asking a compensation question"), 133:4–5 (refusing to state how she purchased a car), 200:14–15 (after refusing to testify as to whether she received certain income, refusing to testify as to whether her family members received similar amounts), 227:18 – 228:4 (declining to answer whether Ali was visited by foreign bankers). Ali's caution over unwittingly waiving her Fifth Amendment privilege by testifying on unclear issues does not appear to me to be a sufficient reason to order her to respond to questions that, on their face, are at least potentially incriminating.

The Government asks me to hold an *in camera* hearing to determine "whether unique circumstances are present here that would justify the Respondent's alleged fear of incrimination." It is true that other courts have held *in camera* hearings when necessary to develop a record to rule on inadequately asserted Fifth Amendment invocations. *See, e.g.*, *United States v. Duncan*, 704 F. Supp. 820, 822–23 (N.D. Ill. 1989). But here the record has been developed satisfactorily, and the Government has been able to identify specific topics on which Ali has refused to testify, all of which plainly touch on information that is potentially incriminating. *See Sharp*, 920 F.2d at 1171. In light of the record before me, I cannot see how the *in camera* review of 238 specific questions and answers would be an appropriate expenditure of the resources of the Court or the parties—particularly where the Fifth Amendment invocations to which the Government objects most strenuously appear to be at the very periphery of relevance, *see, e.g.*, Gov't's Supp. Br. 14–15 (citing Ali's refusal to answer a question about what income her family members received or whether she was visited by foreign bankers at any time), and where the documents Ali is being ordered to produce may confirm or refute her claim

that testifying would incriminate her in any event—and may obviate the Government's need for any further testimony on some topics.

In the event that, after reviewing the documents produced by Ali, the Government comes to believe that Ali was not entitled to invoke the Fifth Amendment with respect to specific questions outside the scope of *Sharp*, I will not foreclose its ability to pursue additional testimony at that time. However, on the record before me, I find that the incriminating nature of the information sought by the government readily is apparent and, therefore, that Ali properly has invoked the Fifth Amendment with respect to her testimony. Insofar as the Government seeks to compel further testimony from Ali, the Government's Petition will be denied without prejudice.

## V.    CONCLUSION

For the aforementioned reasons:

1) The United States' Petition to Enforce Summons, ECF No. 1, will be GRANTED with respect to Items 1.A, 1.C–H, 2.A–B, 3.A–I, and 6.A–B, and otherwise will be DENIED without prejudice;

2) Respondent Melina Ali's Petition to Quash Summons and/or Deny Enforcement of the IRS Summons Served on Respondent Melina Ali, ECF No. 7, will be GRANTED with respect to Summons Items 1.B and 9.A, and otherwise will be DENIED;

3) Respondent NEED NOT provide additional testimony in response to the IRS Summons issued April 26, 2013, subject to the Government's ability so to move should further testimony appear necessary after review of documents produced by Ali; and

4) Respondent SHALL PRODUCE documents in response to the Summons that the accompanying Order will direct her to make within twenty-one (21) days of this Memorandum Opinion and accompanying Order; the failure to do so may subject Ali to being held in contempt of court.

A separate order shall issue.

Dated: November 5, 2014

_____/S/_____
Paul W. Grimm
United States District Judge

dsy

23